# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

*handwritten: Jeff Provolt-RA*
Date: 3-4-2021 Time: 1235
by: _____ #: R103195
285 W Tabernacle St #201, St George UT
800-779-0379

Jiaxing Super Lighting Electric Appliance Co., et al.

)
)
)

*Plaintiff*

v.

CH Lighting Technology Ltd., et al.

)
)
)
)

Civil Action No. 6:20-CV-00018-ADA

*Defendant*

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:

ESL Vision LLC
1136 S 3600 W, Suite 400, Salt Lake City, Utah 84104

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:
See attached Schedule B

| Place: Advanced Reporting 159 West Broadway, Suite 100 Salt Lake City, Utah 84101 | Date and Time: 04/02/2021 9:00 am |
|---|---|

The deposition will be recorded by this method:   stenographically and by video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   03/03/2021

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Miguel J. Bombach
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiffs, Jiaxing Super Lighting Electric Appliance Co., Ltd. et al._____ , who issues or requests this subpoena, are:

Perkins Coie LLP, Miguel J. Bombach, 11452 El Camino Real, Suite 300, San Diego CA 92130; Phone (858) 720-5747;
E-Mail: mbombach@perkinscoie.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 6:20-CV-00018-ADA

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____    on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE B

## DEFINITIONS

A.      "You," "Your," and "ESL" mean ESL Vision LLC, and any of its directors,

officers, consultants, agents, representatives, predecessors and successors in interest, parents,

subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities

acting on its behalf, or who are or were subject to the direction or control of any of the foregoing,

including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and

representatives, or any other Entity providing LED Tube Lamps under the ESL name.

B.      "CH Lighting" shall mean CH Lighting Technology Co., Ltd. and its parents,

subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly

or partly owned entities of CH Lighting, any principals or owners thereof, and any and all

persons or entities who are or were controlled by or otherwise acting or purporting to act on

behalf of any of the foregoing, or who are or were subject to the direction or control of any of the

foregoing, including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and

representatives.

C.      "Ruising" shall mean Shaoxing Ruising Lighting Co., Ltd. and its parents,

subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly

or partly owned entities of Ruising, any principals or owners thereof, and any and all persons or

entities who are or were controlled by or otherwise acting or purporting to act on behalf of any of

the foregoing, or who are or were subject to the direction or control of any of the foregoing,

including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and representatives.

D.     "Elliott" shall mean Elliott Electric Supply, Inc. and its parents, subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly or partly owned entities of Elliott, any principals or owners thereof, and any and all persons or entities who are or were controlled by or otherwise acting or purporting to act on behalf of any of the foregoing, or who are or were subject to the direction or control of any of the foregoing, including all present and former officers, directors, employees, researchers, scientists, developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and representatives.

E.     "Super Lighting" shall mean Jiaxing Super Lighting Electric Appliance Co., Ltd. and any of its directors, officers, consultants, agents, representatives, predecessors and successors in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities acting on its behalf.

F.     "Obert" shall mean Obert, Inc. and any of its directors, officers, consultants, agents, representatives, predecessors and successors in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities acting on its behalf.

G.     "Your Supplier(s)" shall mean entities that supply LED Tube Lamps to You, including but not limited to CH Lighting or Ruising.

H.     "Action" or "Case" shall mean *Jiaxing Super Lighting Electric Appliance Co., Ltd., et al., v. CH Lighting Technology Co., Ltd., et al.*, Civ. No. 6:20-cv-00018 (W.D. Tex.).

I.     "Patents-in-Suit" or "Asserted Patents" means U.S. Patent Nos. 10,295,125 (the "'125 Patent"), 10,342,078 (the "'078 Patent"), 10,352,540 (the "'540 Patent"), 10,426,003 (the

"'003 Patent"), 9,939,140 (the "'140 Patent), 10,378,700 (the "'700 Patent"), 10,448,479 (the "'479 Patent"), and 10,560,989 (the "'989 Patent").

J.     "LED Tube Lamp(s)" refers to lighting products that use light emitting diodes within tubes, including but not limited to the 10 Watt T8 Type A/B Glass Dual Tech (GDT) Tube (*e.g.*, ESL-T8-GDT2-10W-F330, ESL-T8-GDT2-10W-F335, ESL-T8-GDT2-10W-F340, ESL-T8-GDT2-10W-F350); 12 Watt T8 Type A/B Glass Dual Tech (GDT) (*e.g.,* ESL-T8-GDT-12W-F330, ESL-T8-GDT-12W-F335, ESL-T8-GDT-12W-F340, ESL-T8-GDT-12W-F350); 18 Watt T8 Type A/B Glass Dual Tech (GDT) (*e.g.,* ESL-T8-GDT-18W-F330, ESL-T8-GDT-18W-F335, ESL-T8-GDT-18W-F340, ESL-T8-GDT-18W-F350); 9 Watt T8 Type B Glass Line Voltage (GLV) Tube (*e.g.*, ESL-T8-GLV2-9W-F230, ESL-T8-GLV2-9W-F235, ESL-T8-GLV2-9W-F240, ESL-T8-GLV2-9W-F250); ); 12 Watt T8 Type B Glass Line Voltage (GLV) Tube (*e.g.*, ESL-T8-GLV-12W-F330, ESL-T8-GLV-12W-F335, ESL-T8-GLV-12W-F340, ESL-T8-GLV-12W-F350); 18 Watt T8 Type B Glass Line Voltage (GLV) Tube (*e.g.*, ESL-T8-GLV-18W-F330, ESL-T8-GLV-18W-F335, ESL-T8-GLV-18W-F340, ESL-T8-GLV-18W-F350); 36 Watt T8 Type B Glass Line Voltage (GLV) Tube (*e.g.*, ESL-T8-GLV8-36W-F340, ESL-T8-GLV8-36W-F350); and any subcomponent of the foregoing.

K.     "UL" shall mean any classification, standard, or mark as described by Underwriters Laboratories (UL) (https://www.ul.com/).

L.     The term "Document," as used herein, has the same meaning that it has under Federal Rule of Civil Procedure 34 (including electronically stored information as specified in FRCP 34), and includes the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic or photographic material of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however

produced or reproduced, including on computer tapes, disks, ROM, CD-ROM or any other data storage media (whether or not it is in machine-readable form), and including but not limited to: accounting materials, accounts, advertisements, agreements, analyses, appointment blueprints, archived electronic mail messages, archived voice mail messages, books, books of account, brochures, calendars, catalogs, CD-ROMs, charts, checks, communications, computer data, computer disks, computer generated or stored information, computer processing cards or tapes, computer programming materials, contracts, correspondence, customer lists, DATs, date books, diaries, discs, diskettes, drawings, DVDs, electronic-mail messages, faxes, films, flash memory chips, graphs, guidelines, information that can be retrieved by any process or test or analysis, instructions, inter-office communications, invoices, laboratory notebooks, ledgers, letters, licenses, logs, manuals, memoranda, memory media or banks (including hard disks, floppy disks, diskettes, high capacity removable storage disks, CD-ROMs, DVDs, DATs, and flash memory chips or their functional equivalents), messages via a messenger service, microfilm, minutes, models, notes, opinions, packaging, pamphlets, payments, photographs, phonorecords, photoboards, plans, proposals, price lists, prototypes, raw data tests or test results, receipts, recorded recollections, records, regulations, reports, social media posts, sound recordings, specifications, spreadsheets, statements, studies, surveys, tapes, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained) and working papers, writings, and all other means by which information is stored for retrieval in fixed form.

      M.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean concerning, constituting, comprising, containing, discussing, embodying, evidencing, identifying, involving, mentioning, reflecting, regarding, stating, relating or referring (directly or indirectly) to or in any way relevant to such subject.

N.     The singular shall include the plural.  Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender in each case as most appropriate.

O.     The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

P.     The connectives "and" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request most inclusive.

Q.     The word "each" as used herein includes the word "every," and the word "every" herein includes the word "each," whichever makes the request most inclusive.

R.     The word "all" as used herein includes the word "each," and the word "each" herein includes the word "all," whichever makes the request most inclusive.

## DEPOSITION TOPICS

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, You shall designate and produce for deposition one or more persons most knowledgeable about the following topics:

1.     The manufacture, importation, exportation, distribution, supply, or sale of LED Tube Lamps, including but not limited to agreements between You and Your Supplier(s).

2.     The LED Tube Lamps supplied by You to Elliott.

3.     The LED Tube Lamps supplied by You to Elliott, including communications with Your Supplier(s) and business forecasts for supply to Elliott.

4.     The number of LED Tube Lamps provided to You by Your Supplier(s) on an individual product basis that are imported or exported into the United States.

5.     The number of LED Tube Lamps provided to You by Your Supplier(s) on an individual product basis, including the price of the LED Tube Lamps, quantities purchased by You, and the amount paid by You.

6. The individual(s) responsible for obtaining LED Tube Lamps from Your Supplier(s).

7. Your Supplier(s) for each LED Tube Lamp product.

8. The projected total number of LED Tube Lamps to be provided to You by Your Supplier(s) on an individual product basis and their projected price.

9. The invoices for each shipment of the LED Tube Lamps from Your Supplier(s) to You.

10. The location where title of each LED Tube Lamp in each shipment of the LED Tube Lamps changed from Your Supplier(s) to You.

11. The port of entry in the United States for each shipment of the LED Tube Lamps.

12. The LED Tube Lamps, including but not limited to spec-sheets, datasheets, drawings, figures, schematics, block diagrams, white papers, circuit diagrams, installation guides, marketing materials, manuals, and compliance with UL standards.

13. Communications with Your Supplier(s) relating to customer complaints and/or safety complaints received by You for the LED Tube Lamps.

14. Bids and/or other responses to requests for proposals submitted by Your Supplier(s) to You relating to LED Tube Lamps.

15. The share of LED Tube Lamps that are manufactured by Your Supplier(s) on an annual or quarterly basis.

16. The share of LED Tube Lamps that are manufactured by other entities on an annual or quarterly basis.

17. Your competitors for LED Tube Lamps which are manufactured by Your Supplier(s).

18.    Internal code names or numbers You use for each of the LED Tube Lamps.

19.    Factors that influenced the prices You paid each manufacturer of LED Tube Lamps and changes in such prices over time.

20.    E-Mails and/or any other communications between You and any of CH Lighting, Ruising, and/or Elliott or any other person or entity, including any of Your Supplier(s), relating to the Asserted Patents or this Case.

21.    The identities of Your purchasers and resellers of the LED Tube Lamps in the United States.

22.    The identities of manufacturers of the LED Tube Lamps.

23.    Agreements between any of CH Lighting, Ruising, and Elliott and You including, but not limited to, agreements that relate to LED Tube Lamps, the Asserted Patents, Super Lighting, Obert, and/or this Action.

24.    Licenses paid or received or any agreement reached by You relating to patents for LED Tube Lamps.

25.    The factors You considered when selecting suppliers for LED Tube Lamps.

26.    The factors You considered when selecting which LED Tube Lamps to purchase from suppliers.

27.    When, where, and how You learned about this Case.

28.    This Case, Super Lighting, or the Asserted Patents.

29.    The Documents and Things relating to CH Lighting and/or Ruising.

30.    The Documents and Things relating to Elliott.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
for the

Western District of Texas ☐

| | |
|---|---|
| Jiaxing Super Lighting Electric Appliance Co., et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 6:20-CV-00018-ADA |
| CH Lighting Technology Ltd., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: ESL Vision LLC
1136 S 3600 W, Suite 400, Salt Lake City, Utah 84104

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Perkins Coie LLP 11452 El Camino Real, Suite 300 San Diego, CA 92130 | Date and Time: 03/26/2021 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/03/2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Miguel J. Bombach |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Plaintiffs, Jiaxing Super Lighting Electric Appliance Co., Ltd. et al._____ , who issues or requests this subpoena, are:
Perkins Coie LLP, Miguel J. Bombach, 11452 El Camino Real, Suite 300, San Diego CA 92130; Phone (858) 720-5747;
E-Mail: mbombach@perkinscoie.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 6:20-CV-00018-ADA

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____     _____

_____     on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____

                                             *Server's signature*

                                 _____

                                             *Printed name and title*

                                 _____

                                             *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## DEFINITIONS

A.     "You," "Your," and "ESL" mean ESL Vision LLC, and any of its directors,

officers, consultants, agents, representatives, predecessors and successors in interest, parents,

subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities

acting on its behalf, or who are or were subject to the direction or control of any of the foregoing,

including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and

representatives, or any other Entity providing LED Tube Lamps under the ESL name.

B.     "CH Lighting" shall mean CH Lighting Technology Co., Ltd. and its parents,

subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly

or partly owned entities of CH Lighting, any principals or owners thereof, and any and all

persons or entities who are or were controlled by or otherwise acting or purporting to act on

behalf of any of the foregoing, or who are or were subject to the direction or control of any of the

foregoing, including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and

representatives.

C.     "Ruising" shall mean Shaoxing Ruising Lighting Co., Ltd. and its parents,

subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly

or partly owned entities of Ruising, any principals or owners thereof, and any and all persons or

entities who are or were controlled by or otherwise acting or purporting to act on behalf of any of

the foregoing, or who are or were subject to the direction or control of any of the foregoing,

including all present and former officers, directors, employees, researchers, scientists,

developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and representatives.

D. "Elliott" shall mean Elliott Electric Supply, Inc. and its parents, subsidiaries, affiliates, divisions, predecessors-in-interest, and successors-in-interest, any wholly or partly owned entities of Elliott, any principals or owners thereof, and any and all persons or entities who are or were controlled by or otherwise acting or purporting to act on behalf of any of the foregoing, or who are or were subject to the direction or control of any of the foregoing, including all present and former officers, directors, employees, researchers, scientists, developers, principals, owners, agents, attorneys, contractors, consultants, subcontractors, and representatives.

E. "Super Lighting" shall mean Jiaxing Super Lighting Electric Appliance Co., Ltd. and any of its directors, officers, consultants, agents, representatives, predecessors and successors in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities acting on its behalf.

F. "Obert" shall mean Obert, Inc. and any of its directors, officers, consultants, agents, representatives, predecessors and successors in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys, and any other persons or entities acting on its behalf.

G. "Your Supplier(s)" shall mean entities that supply LED Tube Lamps to You, including but not limited to CH Lighting or Ruising.

H. "Action" or "Case" shall mean *Jiaxing Super Lighting Electric Appliance Co., Ltd., et al., v. CH Lighting Technology Co., Ltd., et al.*, Civ. No. 6:20-cv-00018 (W.D. Tex.).

I. "Patents-in-Suit" or "Asserted Patents" means U.S. Patent Nos. 10,295,125 (the "'125 Patent"), 10,342,078 (the "'078 Patent"), 10,352,540 (the "'540 Patent"), 10,426,003 (the

"'003 Patent"), 9,939,140 (the "'140 Patent), 10,378,700 (the "'700 Patent"), 10,448,479 (the "'479 Patent"), and 10,560,989 (the "'989 Patent").

J.     "LED Tube Lamp(s)" refers to lighting products that use light emitting diodes within tubes, including but not limited to the 10 Watt T8 Type A/B Glass Dual Tech (GDT) Tube (e.g., ESL-T8-GDT2-10W-F330, ESL-T8-GDT2-10W-F335, ESL-T8-GDT2-10W-F340, ESL-T8-GDT2-10W-F350); 12 Watt T8 Type A/B Glass Dual Tech (GDT) (e.g., ESL-T8-GDT-12W-F330, ESL-T8-GDT-12W-F335, ESL-T8-GDT-12W-F340, ESL-T8-GDT-12W-F350); 18 Watt T8 Type A/B Glass Dual Tech (GDT) (e.g., ESL-T8-GDT-18W-F330, ESL-T8-GDT-18W-F335, ESL-T8-GDT-18W-F340, ESL-T8-GDT-18W-F350); 9 Watt T8 Type B Glass Line Voltage (GLV) Tube (e.g., ESL-T8-GLV2-9W-F230, ESL-T8-GLV2-9W-F235, ESL-T8-GLV2-9W-F240, ESL-T8-GLV2-9W-F250); ); 12 Watt T8 Type B Glass Line Voltage (GLV) Tube (e.g., ESL-T8-GLV-12W-F330, ESL-T8-GLV-12W-F335, ESL-T8-GLV-12W-F340, ESL-T8-GLV-12W-F350); 18 Watt T8 Type B Glass Line Voltage (GLV) Tube (e.g., ESL-T8-GLV-18W-F330, ESL-T8-GLV-18W-F335, ESL-T8-GLV-18W-F340, ESL-T8-GLV-18W-F350); 36 Watt T8 Type B Glass Line Voltage (GLV) Tube (e.g., ESL-T8-GLV8-36W-F340, ESL-T8-GLV8-36W-F350); and any subcomponent of the foregoing.

K.     "UL" shall mean any classification, standard, or mark as described by Underwriters Laboratories (UL) (https://www.ul.com/).

L.     The term "Document," as used herein, has the same meaning that it has under Federal Rule of Civil Procedure 34 (including electronically stored information as specified in FRCP 34), and includes the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic or photographic material of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however

- 3 -

produced or reproduced, including on computer tapes, disks, ROM, CD-ROM or any other data storage media (whether or not it is in machine-readable form), and including but not limited to: accounting materials, accounts, advertisements, agreements, analyses, appointment blueprints, archived electronic mail messages, archived voice mail messages, books, books of account, brochures, calendars, catalogs, CD-ROMs, charts, checks, communications, computer data, computer disks, computer generated or stored information, computer processing cards or tapes, computer programming materials, contracts, correspondence, customer lists, DATs, date books, diaries, discs, diskettes, drawings, DVDs, electronic-mail messages, faxes, films, flash memory chips, graphs, guidelines, information that can be retrieved by any process or test or analysis, instructions, inter-office communications, invoices, laboratory notebooks, ledgers, letters, licenses, logs, manuals, memoranda, memory media or banks (including hard disks, floppy disks, diskettes, high capacity removable storage disks, CD-ROMs, DVDs, DATs, and flash memory chips or their functional equivalents), messages via a messenger service, microfilm, minutes, models, notes, opinions, packaging, pamphlets, payments, photographs, phonorecords, photoboards, plans, proposals, price lists, prototypes, raw data tests or test results, receipts, recorded recollections, records, regulations, reports, social media posts, sound recordings, specifications, spreadsheets, statements, studies, surveys, tapes, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained) and working papers, writings, and all other means by which information is stored for retrieval in fixed form.

M.      The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean concerning, constituting, comprising, containing, discussing, embodying, evidencing, identifying, involving, mentioning, reflecting, regarding, stating, relating or referring (directly or indirectly) to or in any way relevant to such subject.

- 4 -

N.     The singular shall include the plural.  Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender in each case as most appropriate.

O.     The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

P.     The connectives "and" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request most inclusive.

Q.     The word "each" as used herein includes the word "every," and the word "every" herein includes the word "each," whichever makes the request most inclusive.

R.     The word "all" as used herein includes the word "each," and the word "each" herein includes the word "all," whichever makes the request most inclusive.

## GENERAL PROVISIONS AND INSTRUCTIONS

1.     The following instructions apply to the requests below and should be considered as part of each such request.

2.     You are to search all documents within your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the possession of any subsidiary, division, employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf (whether located at his/her residence or place of business), in order to fully respond to the requests herein.

3.     Please produce originals of any document requested and all copies thereof if any copy is other than identical to the original.  In the event that multiple copies of a document exist, produce each copy on which there are any notations or markings of any sort not appearing on any other copy.

4.      Documents from any single file should be produced in the same order as they were found in the file. If copies of documents are products, copies must be legible and bound or stapled in the same manner as the original.

5.      If you have no documents responsive to any particular subject matter, please so state.

6.      If you object to the production of requested documents or parts thereof, produce all documents and parts of documents to which your objection does not apply.

7.      If you do withhold from production any document or thing because of a claim of privilege or other protection, the claim shall be made expressly and shall describe the nature of the document or thing not disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection, as required by Federal Rule of Civil Procedure 45(d)(2).

8.      The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bring within the scope of these requests any information which might otherwise be considered beyond its scope.

9.      Some of the requests for documents and things to be produced may overlap with other requests in order to capture the full scope of potentially relevant material that you may possess in regard to this action. The fact that information may be requested more specifically or in more than one form shall not be interpreted to limit the scope of any request.

10.     If the Documents are produced electronically, they should be produced in a format such that they can be loaded into a database for viewing. All Documents should be converted to single page TIFF images or multi-page searchable PDFs, and documents not easily converted to a TIFF (*e.g.*, excel) should be produced natively. Associated multi-page text files

of extracted text that correspond to each image file should be provided. An ASCII delimited data file (.txt, .dat, and/or .csv) that can be loaded into commercially acceptable database software (*e.g.*, Relativity) should be provided and should contain the following metadata fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, DOCTYPE, EXTENSION, HASHVALUE, NATIVELINK, AUTHOR, FILENAME, DATEMOD, DATECREATED, REDACTED, CONFIDENTIALITY and PRODVOL.

      11.    If you contend that any documents or things requested by this subpoena are confidential or otherwise contain sensitive information, such documents or things shall be produced with an appropriate confidentiality designation (*e.g.*, "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE") subject to the terms of the Protective Order entered in this Case at Dkt. No. 55.

## REQUESTED DOCUMENTS

1.     All Documents relating to the manufacture, importation, exportation, distribution, supply, or sale of LED Tube Lamps, including but not limited to agreements between You and Your Supplier(s).

2.     Documents sufficient to show the LED Tube Lamps supplied by You to Elliott.

3.     All Documents and Things relating to the LED Tube Lamps supplied by You to Elliott, including communications with Your Supplier(s) and business forecasts for supply to Elliott.

4.     Documents sufficient to show, on a quarterly basis, the total number of LED Tube Lamps provided to You by Your Supplier(s) on an individual product basis that are imported or exported into the United States.

5.     Documents sufficient to show, on a quarterly basis, the total number of LED Tube Lamps provided to You by Your Supplier(s) on an individual product basis, including the price of the LED Tube Lamps, quantities purchased by You, and the amount paid by You.

6.     Documents sufficient to show the individual(s) responsible for obtaining LED Tube Lamps from Your Supplier(s).

7.     Documents sufficient to show Your Supplier(s) of each LED Tube Lamp product.

8.     Documents sufficient to show, on a quarterly basis, the projected total number of LED Tube Lamps to be provided to You by Your Supplier(s) on an individual product basis and their projected price.

9.     Documents sufficient to show invoices for each shipment of the LED Tube Lamps from Your Supplier(s) to You.

10.    Documents sufficient to identify the location where title of each LED Tube Lamp in each shipment of the LED Tube Lamps changed from Your Supplier(s) to You.

11.     Documents sufficient to identify the United States port of entry for each shipment of the LED Tube Lamps.

12.     All Documents and Things relating to the LED Tube Lamps, including but not limited to spec-sheets, datasheets, drawings, figures, schematics, block diagrams, white papers, circuit diagrams, installation guides, marketing materials, manuals, and compliance with UL standards, including but not limited to Documents provided to You by Your Supplier(s).

13.     All Documents and Things relating to communications with Your Supplier(s) relating to customer complaints and/or safety complaints received by You for the LED Tube Lamps.

14.     Documents sufficient to show all bids and/or other responses to requests for proposals submitted by Your Supplier(s) to You relating to LED Tube Lamps.

15.     Documents sufficient to identify the share of LED Tube Lamps that are manufactured by Your Supplier(s) on an annual or quarterly basis.

16.     Documents sufficient to identify the share of LED Tube Lamps that are manufactured by other entities on an annual or quarterly basis.

17.     Documents sufficient to show Your competitors for LED Tube Lamps which are manufactured by Your Supplier(s).

18.     Documents sufficient to identify internal code names or numbers You use for each of the LED Tube Lamps.

19.     Documents sufficient to identify factors that influenced the prices You paid each manufacturer of LED Tube Lamps and changes in such prices over time.

20. All E-Mails and/or any other communications between You and any of CH Lighting, Ruising, and/or Elliott or any other person or entity, including any of Your Supplier(s), relating to the Asserted Patents or this Case.

21. Documents sufficient to identify Your purchasers and resellers of the LED Tube Lamps in the United States.

22. Documents sufficient to identify manufacturers of the LED Tube Lamps.

23. All Documents and Things relating to any and all agreements between any of CH Lighting, Ruising, and Elliott and You including, but not limited to, agreements that relate to LED Tube Lamps, the Asserted Patents, Super Lighting, Obert, and/or this Action.

24. Any license paid or received or any agreement reached by You relating to patents for LED Tube Lamps.

25. Documents sufficient to show the factors You considered when selecting suppliers for LED Tube Lamps.

26. Documents sufficient to show the factors You considered when selecting which LED Tube Lamps to purchase from suppliers.

27. Documents sufficient to show when, where, and how You learned about this Case.

28. All Documents and Things relating to this Case, Super Lighting, or the Asserted Patents.

29. All Documents and Things relating to CH Lighting and/or Ruising.

30. All Documents and Things relating to Elliott.

# EXHIBIT C

Scott M. Lilja #4231
Nicole M. Deforge #7581
FABIAN VANCOTT
215 S. State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
Fax: (801) 596-2814
slilja@fabianvancott.com
ndeforge@fabianvancott.com
*Attorneys for ESL Vision LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. and OBERT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CH LIGHTING TECHNOLOGY CO. LTD; ELLIOT ELECTRIC SUPPLY INC.; and SHAOXING RUISING LIGHTING CO., LTD., <br><br> Defendants. | **DECLARATION OF MICHAEL GLEESON** <br><br> Misc. Civil No. _____ |

I, Michael Gleeson, declare and state as follows:

1.      Except as otherwise stated herein, the following testimony is based on my own personal knowledge and information.

2.      I am over the age of eighteen and am competent to testify.

3.      I am currently the Managing Director for ESL Vision LLC ("ESL").

4.    I am familiar with ESL's business dealings, transactions, suppliers, customers, and products.

5.    At no time has ESL ever purchased any product from CH Lighting, Ruising, Super Lighting or any other party listed in the Subpoenas relating to LED Tube Lamps.

6.    At no time has ESL ever sold any product to CH Lighting, Ruising, Super Lighting or any other manufacturer listed in the Subpoenas relating to LED Tube Lamps.

7.    Elliott Electric Supply Inc. is a distributor of LED Tube Lamps.

8.    ESL is in the business of, among other things, manufacturing LED Tube Lamps, as are CH Lighting, Ruising, and Super Lighting. The information and document categories in the subpoenas require ESL to disclose, in detail, its business in LED Tube Lamps, including specific numbers of LED Tube Lamps acquired and sold, the identities of its suppliers and customers, ESL's business strategy, and pricing of LED Tube Lamps acquired and sold. This information is confidential commercial information to ESL and is kept secret by ESL.

I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

EXECUTED March  29 , 2021, at Salt Lake County, Utah.

_____
Michael Gleeson

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND OBERT, INC., | § § § § | |
| Plaintiffs, | § § | CASE NO. 6:20-cv-00018-ADA |
| vs. | § § | JURY TRIAL DEMANDED |
| CH LIGHTING TECHNOLOGY CO., LTD., ELLIOTT ELECTRIC SUPPLY INC. AND SHAOXING RUISING LIGHTING CO., LTD., | § § § § § § | |
| Defendants. | § § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") and

Obert, Inc. ("Obert") (collectively "Plaintiffs") hereby assert the following claims for patent

infringement against Defendants CH Lighting Technology Co., Ltd. ("CH Lighting"), Elliott

Electric Supply Inc. ("Elliott") and Shaoxing Ruising Lighting Co., Ltd. ("Ruising")

(collectively "Defendants"), and allege as follows:

## THE PARTIES

1.     Plaintiff Super Lighting is a corporation organized and existing under the laws of

the People's Republic of China with its principal place of business at No. 1288 Jiachuang Rd.,

Xiuzhou Area, Jiaxing, Zhejiang, China.

2.     Plaintiff Obert is the North American affiliate of Super Lighting and is a

corporation organized under California law, with a principal place of business at 1380 Charles

Willard St., Carson CA 90746.

3.      CH Lighting is a corporation organized and existing under the laws of the People's Republic of China who has, upon information and belief, a principal place of business at Chenhui Guangbao Industrial Park, Xietang Town, Shangyu District, Shaoxing City, Zhejiang, China (中国浙江省绍兴市上虞区谢塘晨辉光宝工业园区).

4.      Elliott is a Texas corporation with a regular and established place of business at 3325 Clay Avenue, Waco, Texas, and at other locations in this District.

5.      Ruising is a corporation organized and existing under the laws of the People's Republic of China who has, upon information and belief, a principal place of business at No. 0706-1, Shimao Skyline Center, Di Dang New City, Yuecheng District, Shaoxing, Zhejiang, China (中国浙江省绍兴市越城区迪荡新城世茂天际中心 0706 号-1).

## BACKGROUND OF THE PARTIES

6.      Super Lighting and Obert share a parent, Zhejiang Super Lighting Electric Appliance Co. Ltd. (collectively in this section the three companies are referred to as the "Super Lighting Group").

7.      With approximately 2000 employees worldwide, the Super Lighting Group is focused on creating more environmentally friendly and sustainable products, such as its full range of energy efficient tube lighting products from fluorescent lamps to LED lighting.  The Super Lighting Group is an industry leading manufacturer who is a major supplier of LED tubes to many brand name companies in the United States and throughout the world.

8.      Over 25 years ago, in 1993, the Super Lighting Group was founded.  Since then, the Super Lighting Group has conducted significant research, development, and innovation in the area of lighting technologies, including fluorescent and LED tube lamp products.  The Super

Lighting Group's investment and continuous innovation have driven progress across the lighting industry, including in the areas of safety, reliability and energy efficiency. The Super Lighting Group has a patent portfolio of over 700 issued patents and patent applications worldwide, primarily related to LED tube lamps.

9.      CH Lighting and Ruising manufacture and/or distribute the products accused of infringement in this case, and upon information and belief the two companies export those products from China and import them into the United States or direct those products to be imported into the United States, and upon information and belief they also offer to sell and/or sell those products in the United States. Upon information and belief, CH Lighting and Ruising have also used and demonstrated the accused products in the United States. Further upon information and belief, CH Lighting and Ruising are affiliated companies that share one or more officers, board members, and/or managers, with CH Lighting being a majority shareholder of Ruising. According to its website, CH Lighting has over 2000 employees. http://en.chlighting.com/intro/4.html

10.     Elliott sells and offers to sell the products accused of infringement in this case in this district, throughout Texas, and throughout the United States.

11.     Upon information and belief, CH Lighting and/or Ruising is paying for Elliott's defense and any potential judgment in this case.

## JURISDICTION AND VENUE

12.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

147376000.1

13.     This Court has personal jurisdiction over Defendants.  Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States.

14.     Personal jurisdiction by this Court over CH Lighting and Ruising is appropriate at least under a specific jurisdiction and/or stream of commerce theory.  Upon information and belief, CH Lighting and Ruising import or direct their distributors to import LED tube lamp products, including the products accused of infringement in this case, through several ports of entry throughout the United States.  CH Lighting and Ruising intend for their LED tube lamp products to be sold throughout the United States, including Texas.  In addition, CH Lighting and Ruising deliver LED tube lamp products, including products accused of infringement in this case, into the stream of commerce with the expectation that they will be purchased by customers in Texas.  CH Lighting and Ruising are trying to and actually do serve the Texas market, either directly or indirectly, with their LED tube lamp products.  CH Lighting and Ruising are aware their products will reach Texas, and are further aware that their LED tube lamp products are actually sold in Texas.  The exercise of jurisdiction over CH Lighting and Ruising would be fair and reasonable.

15.     Personal jurisdiction by this Court over Elliott is appropriate at least because Elliott is a Texas corporation, and it has had and has substantial, continuous, and systematic contacts with this forum and has purposefully availed itself in Texas of the benefits of conducting activities in the forum by purposefully directing its activities toward the state, including by operating regular and established places of business at 3325 Clay Avenue in Waco, at 2501 S. Fort Hood St. in Killeen, at 2703 Hancock Dr. in Temple, and also by operating other,

regular and established places of business in Andrews, South Austin, North Austin, Bastrop, Cedar Park, Fort Stockton, Georgetown, Kennedy, Kerrville, Leon Valley, Manor, Marble Falls, Midland, New Braunfels, Odessa, Pearsall, Pecos, Pleasanton, Round Rock, San Antonio, San Marcos, and Uvalde. Elliott sells and offers for sale infringing products in this state, including at these locations. Elliott, therefore, obtains the benefits and protections of the State of Texas' laws. This dispute arises out of and has a substantial connection with Elliott's contacts with this state and its infringement in this state, and exercise of jurisdiction would be fair and reasonable.

16.     Plaintiffs incorporate herein the allegations contained in the preceding paragraphs 1-14. Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1391 (b) and (c) and 28 U.S.C. § 1400(b). Regarding 28 U.S.C. § 1400(b), CH Lighting and Ruising are foreign corporations and may be sued in this judicial district. Elliott may be sued in this district because it has a regular and established place of business in this district, **and** because it commits acts of infringement (*i.e.*, sells and offers to sell accused products) in this **district**. Specifically, Elliott has a regular and established place of business at 3325 Clay Avenue, Waco, Texas. Elliott also has regularly established places of business within this district at 2501 S. Fort Hood St., Killeen, Texas, and also at 2703 Hancock Dr., Temple, Texas. Elliott has additional, regular, and established places of business in this district in the following locations:  Andrews, South Austin, North Austin, Bastrop, Cedar Park, Fort Stockton, Georgetown, Kennedy, Kerrville, Leon Valley, Manor, Marble Falls, Midland, New Braunfels, Odessa, Pearsall, Pecos, Pleasanton, Round Rock, San Antonio, San Marcos, and Uvalde. Elliott sells and/or offers for sale the products accused of infringement at these locations in this district.

147376000.1

## ASSERTED PATENTS

17.     Super Lighting is the current owner and assignee of over 100 U.S. patents, including U.S. Patent Nos. 10,295,125 (the "'125 Patent"), 10,342,078 (the "'078 Patent"), 10,352,540 (the "'540 Patent"), 10,426,003 (the "'003 Patent"), 9,939,140 (the "'140 Patent), 10,378,700 (the "'700 Patent"), 10,448,479 (the "'479 Patent"), and 10,560,989 (the "'989 Patent") (collectively the "Patents-in-Suit"). Super lighting has the right to bring and join actions by Obert to recover damages for Defendants' infringement of the Patents-in-Suit.

18.     Obert is the exclusive licensee of the Patents-in-Suit and has the right to bring and join actions by Super Lighting to recover damages for Defendants' infringement of the Patents-in-Suit.

19.     The '125 Patent duly and legally issued on May 21, 2019. The '125 Patent is valid and enforceable.

20.     The '078 Patent duly and legally issued on July 2, 2019. The '078 Patent is valid and enforceable.

21.     The '540 Patent duly and legally issued on July 16, 2019. The '540 Patent is valid and enforceable.

22.     The '003 Patent duly and legally issued on September 24, 2019. The '003 Patent is valid and enforceable.

23.     The '140 Patent duly and legal issues on April 10, 2018. The '140 Patent is valid and enforceable.

24.     The '700 Patent duly and legal issues on August 13, 2019. The '700 Patent is valid and enforceable.

147376000.1

25.     The '479 Patent duly and legal issues on October 15, 2019.  The '479 **Patent is** valid and enforceable.

26.     The **'989 Patent duly and legal issues** on February 11, 2020.  The '989 Patent is valid and enforceable.

## **DEFENDANTS' KNOWLEDGE OF ASSERTED PATENTS**

27.     CH Lighting says that its "core value" includes being "honest," "tak[ing] **the right** path," "to take responsibility," and to "operate legally." http://en.chlighting.com/intro/5.html CH Lighting, however, has completely ignored and continues to ignore these purported core values in its dealings with Super Lighting with respect to the Patents-in-Suit.

28.     On October 2, 2019, representatives of Super Lighting sent CH Lighting a correspondence identifying the Patents-in-Suit, and other Super Lighting patents.  Super Lighting advised CH Lighting that it was infringing the Patents-in-Suit, and requested that CH Lighting cease and desist from its infringing activity.  Super Lighting requested a response by October 30, 2019.  A copy of this correspondence is attached as Exhibit 1.

29.     Neither Gan Caiying, the recipient of the October 2nd correspondence and the CEO of CH Lighting, nor anyone else from CH Lighting ever responded to the October 2nd correspondence.

30.     On November 4, 2019, Super Lighting sent another correspondence to CH Lighting, noting that CH Lighting had not responded to the October 2nd correspondence.  Super Lighting again requested a response to its October 2nd correspondence.  Super Lighting even offered CH Lighting more time to respond if it needed more time.  A copy of this correspondence is attached as Exhibit 2.

147376000.1

31.     Once again, neither Gan Caiying, the CEO of CH Lighting and the recipient of the November 4th correspondence, nor anyone else from CH Lighting ever responded to this November 4th correspondence.

32.     On December 22, 2019, Super Lighting sent a third correspondence to CH Lighting.  This correspondence noted CH Lighting's complete lack of response to the October 2nd and November 4th correspondence, and further noted CH Lighting's continued infringement of the Patents-in-Suit and other Super Lighting patents, and further requested (yet again) that CH Lighting cease and desist from its willful infringement.  A copy of this correspondence is attached as Exhibit 3.

33.     Even though this was the *third* correspondence on the topic of CH Lighting's infringement of the Patents-in-Suit, neither Gan Caiying, the CEO of CH Lighting and the recipient of the December 22nd correspondence, nor anyone else from CH Lighting ever responded to this December 22nd correspondence.

34.     CH Lighting's conduct of intentionally and deliberately ignoring all three of Super Lighting's attempts to discuss the Patents-in-Suit, along with CH Lighting's continued, deliberate, and systematic infringement of the Patents-in-Suit was and continues to be egregious. Rather than taking "the right path" or taking "responsibility," CH Lighting chose the opposite and unreasonable approach of intentionally burying its head in the sand when confronted by its infringement.

35.     Upon information and belief, by virtue of its affiliation with and common manager(s) and/or officer(s) with CH Lighting, and by virtue of CH Lighting's ownership of Ruising, Ruising also had pre-suit notice of the Patents-in-Suit on or about the dates set forth in

paragraphs 28-33. Further upon information and belief, Ruising has deliberately and intentionally chosen to continue its infringement of the Patents-in-Suit.

## COUNT 1

### (Infringement of U.S. Patent No. 10,295,125)

36.     Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

37.     All Defendants have infringed and continue to infringe one or more claims of the '125 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a). CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

38.     Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 29 of the '125 Patent at least by making, using, offering to sell, importing, and/or selling at least the KT-LED7T8-24GC-840-DX2. For example, upon information and belief CH Lighting and Ruising manufacture at least the KT-LED7T8-24GC-840-DX2 and similar infringing LED tube lamps in China, export or encourage others to export the KT-LED7T8-24GC-840-DX2 to the United States, and encourage distributors to sell the KT-LED7T8-24GC-840-DX2 in the United States with knowledge that the KT-LED7T8-24GC-840-DX2 infringes the '125 Patent and the intent for distributors and customers to sell, offer to sell, and use the KT-LED7T8-24GC-840-DX2 and similar infringing LED tube lamps. Distributors and end users directly infringe the '125 Patent by selling, offering to sell, and using infringing products including at least the KT-LED7T8-24GC-840-DX2 and other products which infringe in a similar manner.

147376000.1

39.    Defendant Elliott directly infringes claim 29 by selling and offering to sell the

KT-LED7T8-24GC-840-DX2 in this and other districts.

40.    The KT-LED7T8-24GC-840-DX2 satisfies each of the limitations of at least

claim 29 of the '125 Patent.

41.    For example, the KT-LED7T8-24GC-840-DX2 has a lamp tube and two end caps

attached at two ends of the lamp tube:

 

42.    A power supply is disposed in at least one of the end caps, while an LED light

strip is disposed inside the lamp tube, on an inner circumferential surface of the lamp tube.



43.    The LED light strip of the KT-LED7T8-24GC-840-DX2 comprises both a

mounting region and a connecting region, both of which are electrically connected to the

plurality of LED light sources and the power supply.  A plurality of LED light sources are

mounted on the mounting region:

-10-



44.    The connecting region includes at least two soldering pads for electrically connecting the power supply and "+" and "-" recognizing marks:



45.    A protective layer is disposed on the light strip above the wiring layer:

 

46.     On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '125 Patent in a similar manner as the representative KT-LED7T8-24GC-840-DX2, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

47.     CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '125 Patent.  CH Lighting and Ruising's conduct has been egregious for at least the reasons set forth in the Complaint, including but not limited to their deliberate continued infringement while at the same time ignoring multiple correspondence from Super Lighting.  CH Lighting and Ruising's infringement of the '125 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

48.     Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs.  Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court.  Plaintiffs are entitled to preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '125 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

-12-

## COUNT 2

### (Infringement of U.S. Patent No. 10,342,078)

49.     Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

50.     All Defendants have infringed and continue to infringe one or more claims of the '078 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a).  CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

51.     Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 23 of the '078 Patent at least by making, using, offering to sell, importing, and/or selling at least the 12.5W LED T8 DW 4000K (3000680).  For example, upon information and belief, CH Lighting and Ruising manufacture at least the 12.5W LED T8 DW 4000K (3000680) and similar infringing LED tube lamps in China, export or encourage others to export the 12.5W LED T8 DW 4000K (3000680) to the United States, and encourage distributors to sell the 12.5W LED T8 DW 4000K (3000680) in the United States with knowledge that the 12.5W LED T8 DW 4000K (3000680) infringes the '078 Patent and the intent for distributors and customers to sell, offer to sell, and use the 12.5W LED T8 DW 4000K (3000680) and similar infringing LED tube lamps. Distributors and end users directly infringe the '078 Patent by selling, offering to sell, and using infringing products including at least the 12.5W LED T8 DW 4000K (3000680) and other products which infringe in a similar manner.

147376000.1

52.     Defendant Elliott directly infringes claim 23 by selling and offering to sell the

12.5W LED T8 DW 4000K (3000680) in this and other districts.

53.     The 12.5W LED T8 DW 4000K (3000680) satisfies each of the limitations of at

least claim 23 of the '078 Patent.

54.     For example, the 12.5W LED T8 DW 4000K (3000680) is an LED tube lamp that

has a plurality of LEDs mounted within the tube.



55.     For example, the 12.5W LED T8 DW 4000K (3000680) has a power supply that

has a circuit board, a plurality of electronic components, and a heat-dissipating element that is

mounted on the circuit board.



56.     For example, the 12.5W LED T8 DW 4000K (3000680) has end caps, at the ends

of the tube. The end caps have a lateral wall that is coaxial with the tube, and an end wall that is

substantially perpendicular to an axial direction of the lateral wall. The circuit board is disposed

inside an end cap, and the heat dissipating element extends between the end wall and is disposed

in the end cap opening.

-14-



57.     On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '078 Patent in a similar manner as the representative 12.5W LED T8 DW 4000K (3000680), including at least the models substantially similar to CH Lighting models, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

58.     CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '078 Patent.  CH Lighting and Ruising's infringement of the '078 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

59.     Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs.  Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court.  Plaintiffs are entitled to preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '078 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## COUNT 3

**(Infringement of U.S. Patent No. 10,352,540)**

60.     Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

-15-

61.     All Defendants have infringed and continue to infringe one or more claims of the '540 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a).  CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

62.     Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 13 of the '540 Patent at least by making, using, offering to sell, importing, and/or selling at least the L13T8BY5041K.  For example, upon information and belief CH Lighting and Ruising manufacture at least the L13T8BY5041K and similar infringing LED tube lamps in China, export or encourage others to export the L13T8BY5041K to the United States, and encourage distributors to sell the L13T8BY5041K in the United States with knowledge that the L13T8BY5041K infringes the '540 Patent and the intent for distributors and customers to sell, offer to sell, and use the L13T8BY5041K and similar infringing LED tube lamps.  Distributors and end users directly infringe the '540 Patent by selling, offering to sell, and using infringing products including at least the L13T8BY5041K and other products which infringe in a similar manner.

63.     Defendant Elliott directly infringes claim 13 by selling and offering to sell the L13T8BY5041K in this and other districts.

64.     The L13T8BY5041K satisfies each of the limitations of at least claim 13 of the '540 Patent.

-16-

65.    For example, the L13T8BY5041K is an LED tube lamp that has a plurality of

LEDs disposed within the tube as part of an LED light strip on the inner circumferential surface

of the main body, and two ends regions at the end of the main body.  The end caps sleeve the end

regions, and the end caps have a lateral wall that is substantially coaxial with the tube, and an

end wall that is substantially perpendicular to the axial direction of the tube.  The end walls have

two pins to receive a driving signal.



66.    For example, the L13T8BY5041K has a power supply that has a circuit board that

drives the LED light sources.  The circuit board is disposed inside an end region and end cap.



67.    For example, the L13T8BY5041K has an adhesive disposed between the lateral

wall and the rear end regions.

-17-



68.     For example, the L13T8BY5041K has a diffusion film that is disposed on the glass tube to diffuse light emitted from the LEDs.



69.     On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '540 Patent in a similar manner as the representative L13T8BY5041K, including at least the models substantially similar to CH Lighting models, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

70.     CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '540 Patent.  CH Lighting and Ruising's infringement of the '540 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

147376000.1

71.   Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs.  Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court.  Plaintiffs are entitled to preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '540 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## COUNT 4

### (Infringement of U.S. Patent No. 10,426,003)

72.   Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

73.   All Defendants have infringed and continue to infringe one or more claims of the '003 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a).  CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

74.   Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 1 of the '003 Patent at least by making, using, offering to sell, importing, and/or selling at least the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp.  For example, upon information and belief CH Lighting and Ruising manufacture at least the 12.5W LED T8 UNIV 5000K 48" (3000705) and similar infringing LED tube lamps in China, export or encourage others to export the 12.5W LED T8 UNIV 5000K 48" (3000705) to the United States, and encourage distributors to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) in the United States with knowledge that the 12.5W LED T8 UNIV 5000K 48" (3000705) infringes the '003 Patent and the intent for

-19-

distributors and customers to sell, offer to sell, and use the 12.5W LED T8 UNIV 5000K 48"

(3000705) and similar infringing LED tube lamps. Distributors and end users directly infringe

the '003 Patent by selling, offering to sell, and using infringing products including at least the

12.5W LED T8 UNIV 5000K 48" (3000705) and other products which infringe in a similar

manner.

75.    Defendant Elliott directly infringes claim 1 by selling and offering to sell the

12.5W LED T8 UNIV 5000K 48" (3000705) in this and other districts.

76.    The 12.5W LED T8 UNIV 5000K 48" (3000705) satisfies each of the limitations

of at least claim 1 of the '003 Patent.

77.    For example, the 12.5W LED T8 UNIV 5000K 48" (3000705) is an LED tube

lamp with two end caps at each end of the tube. Each of the end caps comprises a lateral wall

substantially coaxial with the tube, an end wall substantially perpendicular to an axial direction

of the lateral wall, and at least one opening penetrating through the end wall in a direction

parallel to the axial direction of the lateral wall. The distance between the center of the end wall

and at least one of the openings is approximately 68% of the distance between the center of the

end wall and the periphery of the end wall, which is greater than 2/5 and less than 4/5 of the end

wall radius.

 

78.    A power supply is disposed in at least one end cap, while an LED light strip is disposed in the tube. The LED light strip contains a plurality of LED light sources electrically connected to the power supply via the LED light strip.



79.    On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '003 Patent in a similar manner as the representative 12.5W LED T8 UNIV 5000K 48" (3000705), including at least the models substantially similar to CH Lighting models, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

80.    CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '003 Patent. CH Lighting and Ruising's infringement of the '003 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

81.    Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and

147376000.1

irreparable injury until that infringement is enjoined by this Court. Plaintiffs are entitled to preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '003 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## COUNT 5

### (Infringement of U.S. Patent No. 9,939,140)

82.   Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

83.   All Defendants have infringed and continue to infringe one or more claims of the '140 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a). CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

84.   Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 1 of the '140 Patent at least by making, using, offering to sell, importing, and/or selling at least the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp. For example, upon information and belief CH Lighting and Ruising manufacture at least the 12.5W LED T8 UNIV 5000K 48" (3000705) and similar infringing LED tube lamps in China, export or encourage others to export the 12.5W LED T8 UNIV 5000K 48" (3000705) to the United States, and encourage distributors to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) in the United States with knowledge that the 12.5W LED T8 UNIV 5000K 48" (3000705) infringes the '140 Patent and the intent for distributors and customers to sell, offer to sell, and use the 12.5W LED T8 UNIV 5000K 48" (3000705) and similar infringing LED tube lamps. Distributors and end users directly infringe

the '140 Patent by selling, offering to sell, and using infringing products including at least the 12.5W LED T8 UNIV 5000K 48" (3000705) and other products which infringe in a similar manner.

85.     Defendant Elliott directly infringes claim 1 by selling and offering to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) in this and other districts.

86.     The 12.5W LED T8 UNIV 5000K 48" (3000705) satisfies each limitation of at least claim 1 of the '140 Patent.

87.     For example, the 12.5W LED T8 UNIV 5000K 48" (3000705) has an LED tube lamp.



88.     The 12.5W LED T8 UNIV 5000K 48" (3000705) has an installation detection circuit, *e.g.*, the CHP6061-MV1.0 with the DIO8270 Intelligent Power Protection Switch and associated circuitry.  The CHP6061-MV1.0 with the DIO8270 receive an external driving signal.



89.     On information and belief, the installation detection circuit has a pulse generating circuit, and the installation detection circuit detects, during one of those pulses, whether the LED

147376000.1

tube lamp is properly installed on a lamp socket based on detecting a signal generated from the external driving signal. On information and belief, circuitry internal to the DIO8270 and associated external circuitry on the CHP6061-MV1.0 form a pulse generating circuit, and the pulse generating circuitry provides a pulse based in part on the voltage provided to pin 2 on the DIO8270 and, during that pulse, detects a signal input from pin 3 (connected to Pin 7 through D6 and R17) of the DIO8270. On information and belief, pin 7 provides the external driving signal from pin 5.



90.    On information and belief, the installation detection circuit has a switch circuit coupled to the pulse generating circuit, where the pulses control turning the switch circuit on and off. On information and belief, circuitry internal to the DIO8270 provides an N-Type MOSFET (CP2) with a gate input and pin 5 and pin 7 which act as a drain and source, respectively. On information and belief, the DIO8270's N-Type MOSFET receives a signal from the pulse generating circuit (shown partially by CP1) and that signal is used, in part, to control switching the N-Type MOSFET on and off.

-24-




91.     On information and belief, the installation detection circuit controls the switch

circuit to be in an off state when the installation detection circuit detects, during the one or more

pulse signals, that the LED tube lamp is not properly installed on the lamp socket.  The

DIO8270's N-Type MOSFET remains in an off state, *i.e.*, does not provide biasing voltage to

CP2's gate, and causes the power loop of the LED tube lamp to be open, when the LED tube

lamp is not properly installed.  This open circuit occurs while the pulse generating circuitry

provides a pulse based, in part, on the voltage provided on pin 2 to the DIO8270.  The power

loop to the LED Tube lamp is open because its current path through RS2->RS1->(common node

denoted by Earth Ground)->L2->M3 is not conducting because the DIO8270's N-Type

MOSFET is not conducting between its source (pin 7) and drain (pin5).



92.     On information and belief, the installation detection circuit controls the switch circuit to be in an on state when the installation detection circuit detects, during the one or more pulse signals, that the LED tube lamp is properly installed on the lamp socket. The DIO8270's N-Type MOSFET remains in an on state, *i.e.*, does provide biasing voltage to CP2's gate, and causes the power loop of the LED tube lamp to be closed, when the LED tube lamp is properly installed. This closed circuit occurs while the pulse generating circuitry provides a pulse based, in part, on the voltage provided on pin 2 to the DIO8270. The power loop to the LED Tube lamp is closed because its current path through RS2->RS1->(common node denoted by Earth Ground)->L2->M3 is conducting because the DIO8270's N-Type MOSFET is conducting between its source (pin 7) and drain (pin5).



93.     On information and belief, the signal generated from the external driving signal is a sampling signal on the power loop and the installation detection circuit further comprises a detection determining circuit that detects the sampling signal to determine whether the LED tube lamp is properly installed. The signal input to pin 3, which is output from pin 7 through D6 and R17, is from the power loop of the LED lamp and the switch because it is from pin 5 (the drain of CP2), and forms part of the detection determining circuit.



94.     The pulse generating circuit is configured to output pulses independent of whether the detection determining circuit detects the sampling signal. The DIO8270 generates a pulse internal to the DIO8270 based on the voltage inputted to pin 2 independent of voltage applied to pin 3.

95.     On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '140 Patent in a similar manner as the representative 12.5W LED T8 UNIV 5000K 48" (3000705), including at least the models substantially similar to CH Lighting models, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

96.     CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '140 Patent. CH Lighting and Ruising's infringement of the '140 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

97.     Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court. Plaintiffs are entitled to

-27-

preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '140 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

### COUNT 6

### (Infringement of U.S. Patent No. 10,378,700)

98.     Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

99.     All Defendants have infringed and continue to infringe one or more claims of the '700 Patent by making, using, offering to sell, **selling, and/or** importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a).  CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

100.     Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 1 of the '700 Patent at least by making, using, offering to sell, importing, and/or selling at least the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp.  For example, upon information and belief CH Lighting and Ruising manufacture at least the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp and similar infringing LED tube lamps in China, export or encourage others to export the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp to the United States, and encourage distributors to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp in the United States with knowledge that the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp infringes the '700 Patent and the **intent for** distributors and customers to sell, offer to sell, and use the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp and similar infringing LED tube lamps.  Distributors and end users directly infringe the '700 Patent

147376000.1

by selling, offering to sell, and using infringing products including at least the 12.5W LED T8
UNIV 5000K 48" (3000705) LED tube lamp and other products which infringe in a similar
manner.

101.    Defendant Elliott directly infringes claim 1 by selling and offering to sell the
12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp in this and other districts.

102.    The 12.5W LED T8 UNIV 5000K 48" (3000705) satisfies each of the limitations
of at least claim 1 of the '700 Patent.

103.    For example, the 12.5W LED T8 UNIV 5000K 48" (3000705) is an LED tube
lamp comprising a first pin and a second pin coupled to a first end of a lamp tube and a third pin
coupled to a second end of the lamp tube:





104.    The tube lamp comprises two rectifying circuits, each of which comprises diodes. A first rectifying circuit is connected to the two pins at the first end of the lamp tube and a second rectifying circuit is connected to a pin at the second end of the lamp tube, and both rectifying circuits are for rectifying an external driving signal (e.g. electrical signals applied to the input pins) to produce a rectified signal:



105.    The tube lamp further comprises a filtering circuit coupled to the two rectifying circuits and an LED module for filtering the rectified signal to produce a filtered signal:

-30-



106.    The tube lamp further comprises an LED module which includes LEDs for emitting light, and is configured to be driven either by the rectified signal or by the filtered signal:



147376000.1

107.    The tube lamp further comprises a driving circuit coupled between the rectifying

circuits and the LED module and configured to drive the LED module:



108.    The LED tube lamp is further configured to receive an external driving signal

from a low-frequency direct AC input either at one end through both pins or through pins at both

ends of the lamp tube:



109.    The LED lamp tube may be also driven by an electrical ballast through pins at

opposite ends of the LED lamp tube:



110.    The LED tube lamp includes a switching device for driving the LED module in different configurations depending on the arrangement of the external driving signal:



111.    When the LED tube lamp receives a low frequency direct AC signal as the external driving signal, the LED tube lamp causes the rectified or filtered signal to be used by the driving circuit for driving the LED module to emit light. However, when the external driving signal is provided across pins at opposite ends of the LED tube lamp by an electrical ballast, the switching device causes the driving circuit to be bypassed and therefore the driving circuit does not drive the LED module to emit light.

112.    On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '700 Patent in a similar manner as

-33-

the representative 12.5W LED T8 UNIV 5000K 48" (3000705), including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

113.    CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '700 Patent. CH Lighting and Ruising's infringement of the '700 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

114.    Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court. Plaintiffs are entitled to preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '700 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## COUNT 7

### (Infringement of U.S. Patent No. 10,448,479)

115.    Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

116.    All Defendants have infringed and continue to infringe one or more claims of the '479 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a). CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants CH Lighting and Ruising continue to induce infringement without authority in violation of 35 U.S.C. § 271(b).

117.     Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 31 of the '479 Patent at least by making, using, offering to sell, importing, and/or selling at least the 12.5W LED T8 UNIV 5000K 48" (3000705) LED tube lamp.  For example, upon information and belief CH Lighting and Ruising manufacture at least the 12.5W LED T8 UNIV 5000K 48" (3000705) and similar infringing LED tube lamps in China, export or encourage others to export the 12.5W LED T8 UNIV 5000K 48" (3000705) to the United States, and encourage distributors to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) in the United States with knowledge that the 12.5W LED T8 UNIV 5000K 48" (3000705) infringes the '479 Patent and the intent for distributors and customers to sell, offer to sell, and use the 12.5W LED T8 UNIV 5000K 48" (3000705) and similar infringing LED tube lamps.  Distributors and end users directly infringe the '479 Patent by selling, offering to sell, and using infringing products including at least the 12.5W LED T8 UNIV 5000K 48" (3000705) and other products which infringe in a similar manner.

118.     Defendant Elliott directly infringes claim 31 by selling and offering to sell the 12.5W LED T8 UNIV 5000K 48" (3000705) in this and other districts.

119.     The 12.5W LED T8 UNIV 5000K 48" (3000705) satisfies each limitation of at least claim 31 of the '479 Patent.

120.     For example, the 12.5W LED T8 UNIV 5000K 48" (3000705) is an LED lamp tube having two external connection terminals coupled to the lamp tube.





121.    The 12.5W LED T8 UNIV 5000K 48" (3000705) has a first rectifying circuit

having diodes connected to two external connection terminals that are for receiving an external

driving signal.  The first rectifying circuit produces a rectified signal from the input external

driving signal.



122.    The 12.5W LED T8 UNIV 5000K 48" (3000705) has an LED module comprising

LEDs for emitting light that are configured to be driven based on the rectified signal.

147376000.1



123.   The 12.5W LED T8 UNIV 5000K 48" (3000705) has an LED driving circuit that is coupled between the rectifying circuit and the LED module.



124.   The 12.5W LED T8 UNIV 5000K 48" (3000705) has a control circuit that is coupled between the first rectifying circuit and the driving circuit.  The 12.5W LED T8 UNIV 5000K 48" (3000705) has the CHP6061-MV1.0 with the DIO8270.



125.   The CHP6061-MV1.0 has two devices connected in series, *e.g.*, R7 and C5, between an output terminal of the first rectifying circuit and ground. R7 and C5 provide a sampled signal on the node between them depending on the property of the rectified signal (VEE).

147376000.1



126. The DIO8270 provides a conduction path through the N-Type MOSFET in the DIO8270 between pins 5 and 7, causing the rectified signal to be used by the driving circuit to drive the LED module and emit light, when the sampled signal (VCC) is higher than a determined level.



127. Following a pre-set delay, if the voltage level of VCC is lower than a predetermined level, the control circuit does not provide a conduction path through pin 5 and 7 of N-Type MOSFET in the DIO8270.

128. R7 and C5 are two devices that form a passive component string connected to the control circuit. They are a resistor and a capacitor, and form an RC time-constant that

-38-

determines the first pre-set delay period. VEE is from the rectified voltage, and is not processed by an active signal to charge C5 and generate VCC.



129.    On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '479 Patent in a similar manner as the representative 12.5W LED T8 UNIV 5000K 48" (3000705), including at least the models substantially similar to CH Lighting models, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

130.    CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '479 Patent, of which, upon information and belief, CH Lighting and Ruising have been aware of since shortly after its issuance based on their notice of and monitoring of Plaintiff's other patents. CH Lighting and Ruising's infringement of the '479 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

131.    Defendants' direct and indirect infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury until that infringement is enjoined by this Court. Plaintiffs are entitled to

-39-

preliminary and permanent injunctive relief and damages as a result of Defendants' infringement of the '479 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## COUNT 8

### (Infringement of U.S. Patent No. 10,560,989)

132. Plaintiffs repeat and re-allege all the allegations above as if fully set forth herein.

133. All Defendants have infringed and continue to infringe one or more claims of the '989 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing devices without authority in violation of 35 U.S.C. § 271(a). CH Lighting and Ruising have actively induced infringement without authority in violation of 35 U.S.C. § 271(b). Defendants **CH Lighting** and Ruising **continue** to induce infringement without authority in violation of 35 U.S.C. § 271(b).

134. Defendants CH Lighting and Ruising have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 1 of the '989 Patent at least by making, using, offering to sell, importing, and/or selling at least the KT-LED7T8-24GC-840-DX2. For example, upon information and belief CH Lighting and Ruising manufacture at least the KT-LED7T8-24GC-840-DX2 and similar infringing LED tube lamps in China, export or encourage others to export the KT-LED7T8-24GC-840-DX2 to the United States, and encourage distributors to sell the KT-LED7T8-24GC-840-DX2 in the United States with knowledge that the KT-LED7T8-24GC-840-DX2 infringes the '989 Patent and the intent for distributors and customers to sell, offer to sell, and use the KT-LED7T8-24GC-840-DX2 and similar infringing LED tube lamps. Distributors and end users directly infringe the '989 Patent

-40-

by selling, offering to sell, and using infringing products including at least the KT-LED7T8-24GC-840-DX2 and other products which infringe in a similar manner.

135.  Defendant Elliott directly infringes claim 1 by selling and offering to sell the KT-LED7T8-24GC-840-DX2 in this and other districts.

136.  The KT-LED7T8-24GC-840-DX2 satisfies each of the limitations of at least claim 1 of the '989 Patent.

137.  For example, the KT-LED7T8-24GC-840-DX2 has a lamp tube with two ends, an LED light strip attached to an inner circumferential surface of the tube, a plurality of LED light sources mounted on the LED light strip, and a power supply module electrically connected to the LED light strip and configured to drive the plurality of LED light sources:



138.  The LED lamp tube further includes first and second end caps attached at the ends of the tube, each of which includes a lateral wall substantially coaxial with and connecting to the tube and an end wall connecting to the lateral wall and substantially perpendicular to the axial direction of the lateral wall:

147376000.1



139.    The power supply module comprises a printed circuit board, having two surfaces substantially parallel to each other and to the axial direction of the lateral wall of the end caps, with a plurality of electronic components mounted on the printed circuit board:



140.    The electronic components on the printed circuit board include a rectifying circuit having at least two input terminals and configured to rectify a signal received from the at least two input terminals, and a filtering circuit electronically connected to the rectifying circuit:



141.    The electronic components on the printed circuit board further comprise a resistor which is positioned closest to the end wall of a first end cap and connects to one of the input terminals of the rectifying circuit.



142.    The end wall comprises a first portion made of an insulating material:



143.    On information and belief, Defendants make, use, offer to sell, and/or import into the United States additional LED tube lamps that infringe the '989 Patent in a similar manner as the representative KT-LED7T8-24GC-840-DX2, including at least the models substantially similar to CH Lighting models such as those found at Exhibit 4.

144.    CH Lighting and Ruising have committed and continue to commit acts of infringement that CH Lighting and Ruising knew or should have known constituted an unjustifiably high risk of infringement of the '989 Patent, of which, upon information and belief, CH Lighting and Ruising have been aware of since shortly after its issuance based on their notice

-44-

of and monitoring of Plaintiff's other patents. **CH Lighting and Ruising's infringement** of the '989 Patent has been and continues to be deliberate and willful, entitling Plaintiffs to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

145.     **Defendants' direct and indirect infringement** has caused and is continuing to cause damage and irreparable injury **to Plaintiffs. Plaintiffs will continue to suffer damage and** irreparable injury until that infringement is enjoined by this Court. **Plaintiffs are entitled to** preliminary and permanent injunctive relief and damages **as a result** of Defendants' infringement **of the '989 Patent in accordance with 35 U.S.C. §§ 271, 281, 283, 284**, and 285.

## **PRAYER FOR RELIEF**

Plaintiffs pray for the following relief:

A.     **A judgment that Defendants have** infringed one or more **claims of each of the** Asserted Patents;

B.     A preliminary and permanent injunction enjoining Defendants and their officers, **directors, agents, servants, affiliates, employees, divisions, branches,** subsidiaries, **parents, and** all others acting **in active concert or participation** with Defendants, from **infringing the Asserted** Patents;

C.     An award of damages resulting from Defendants' acts **of infringement in accordance** with 35 U.S.C. **§ 284;**

D.     **A judgment and order finding that CH** Lighting and Ruising's **acts of** infringement were egregious and willful and trebling damages under 35 U.S.C. **§ 284;**

E.     A judgment and order finding that **this is an** exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable **attorneys' fees** against Defendants.

F.    A judgment and order requiring Defendants to provide accountings and to pay

supplemental damages to Plaintiffs, including, without limitation, prejudgment and post-

judgment interest; and

G.    Any and all other relief to which Plaintiffs may show themselves to be entitled.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated:  March 16, 2020                    Respectfully submitted,

                                         **PERKINS COIE LLP**


                                         By: */s/ Matthew C. Bernstein*
Matthew C. Bernstein (*Pro Hac Vice*)
MBernstein@perkinscoie.com
Evan S. Day (*Pro Hac Vice*)
EDay@perkinscoie.com
Miguel J. Bombach (*Pro Hac Vice*)
MBombach@perkinscoie.com
Ruchika Verma (*Pro Hac Vice*)
RVerma@perkinscoie.com
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Skyler M. Howton, Texas Bar No. 24077907
SHowton@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 259-4951
Facsimile: (214) 965-7752

**ATTORNEYS FOR JIAXING SUPER
LIGHTING ELECTRIC APPLIANCE CO., LTD.
AND OBERT, INC.**

147376000.1

CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered

electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record

on this 16th day of March 2020.


/s/ Matthew C. Bernstein
Matthew C. Bernstein

# EXHIBIT 1

| | | |
|---|---|---|
| **From:** | Cindy Chou <cindychou@atipm.com> | |
| **Sent:** | Wednesday, October 2, 2019 6:53 PM | |
| **To:** | gcy@chlighting.com; xml@chlighting.com | |
| **Cc:** | Henry Hsu; wellsey; simon; SL-General | |
| **Subject:** | Intellectual Property Issue on CH Lighting's Products | |
| **Attachments:** | Claim chart US9894732_K.pdf; Untitled attachment 00009.html; Claim chart US 10426003_U.pdf; Untitled attachment 00012.html | |

Dear Mr. Gan Caiying (CEO):

I represent Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") regarding intellectual property matters. I would like to discuss with you an intellectual property issue on CH Lighting's LED tube products.

Super Lighting has developed a broad patent portfolio and owns more than one hundred U.S. patents and patent applications covering LED tube products. You may find more information about Super Lighting's patent portfolio here: http://jx.super-lamps.com/patent/.

CH Lighting is offering for sale, selling, and delivering LED tube products through various distribution channels directly to companies in the United States. On May 21st 2019, CH Lighting exhibited infringing products and catalogs in the Light Fair International in Philadelphia. We have also reviewed products from your customers' product lines and determined several of these products practice at least Super Lighting's patents, as listed in the table below.

| | Super Lighting's patent | CH Lighting Customers' Products |
|---|---|---|
| 1 | US9,689,536 | TCP<br>1. L13T8BY5041K<br><br>USHIO<br>12.5W LED T8 DW 4000K<br><br>WESTING HOUSE<br>14.5T8/48/50 SE/DE<br><br>KEYSTONE<br>1. KT-LED13T5HE-48GC-835-S<br>2. KT-LED7T8-24GC-840-DX2<br>3. KT-LED14T8-48G-835-X2 |
| 2 | US9,841,174 | |
| 3 | US9,497,821 | |
| 4 | US10,054,271 | |
| 5 | US9,723,662 | |
| 6 | US9,897,265 | |
| 7 | US10,426,003 | |
| 8 | US9,894,732 | |
| 9 | US9,807,826 | |
| 10 | US10,240,725 | |
| 11 | US10,024,503 | |
| 12 | US9,970,602 | |
| 13 | US9,587,817 | |
| 14 | US9,939,140 | |
| 15 | US10,208,897 | |
| 16 | US10,323,838 | |
| 17 | US10,295,125 | |
| 18 | US10,342,078 | |

| 19 | US 10,352,540 |
|----|---------------|
| 20 | US10,190,732 |
| 21 | US9,521,718 |
| 22 | US20190170305A1 |
| 23 | US 9,885,449 |
| 24 | US9,480,109 |
| 25 | US9,775,215 |
| 26 | US10,070,498 |
| 27 | US10,197,225 |
| 28 | US10,378,700 |
| 29 | US10,344,921 |
| 30 | US10,281,092 |
| 31 | US10,317,017 |
| 32 | US10,337,676 |
| 33 | US10,288,272 |
| 34 | US10,408,441 |

CH Lighting's LED tube products are covered by at least 34 Super Lighting patents, as listed in the table above. By way of example, I draw your attention to the two attached claim charts of your customer Ushio's product 12.5W LED T8 DW 4000K in view of U.S. Patent No. 10,426,003 and your customer Keystone's product KT-LED14T8-48G-835-X2 in view of U.S. Patent No. 9,894,732. In particular, these charts show how Ushio's product meets each of the elements of claim 1 of the '003 patent and how Keystone's product meets each of the elements of claim 2 of the '732 patent.

I sincerely ask you to consider our reminder and not to sell or offer to sell products that are covered by Super Lighting's patents and to re-design the products. Super Lighting invests heavily in research and development of innovative LED tube lighting solutions and takes its intellectual property rights and the violation thereof very seriously. Accordingly, Super Lighting demands that you cease and desist selling the products identified in the table above, which plainly infringe Super Lighting's patents.

Please confirm by October 30, 2019 that CH Lighting will do so, otherwise we will have no choice but to take further action to resolve this issue.

Regards,

Cindy

Cindy Chou, Esq.

2

*(CA No. 275544)*

AT IP Management

Email: cindychou@atipm.com

Tel: +1 (832) 538-8868

# EXHIBIT 2

| | |
|---|---|
| **From:** | Cindy Chou <cindychou@atipm.com> |
| **Sent:** | Monday, November 4, 2019 5:17 PM |
| **To:** | gcy@chlighting.com; xml@chlighting.com |
| **Cc:** | Henry Hsu; wellsey; simon; SL-General |
| **Subject:** | Re: Intellectual Property Issue on CH Lighting's Products |

Dear Mrs. Gan Caiying(CEO),

I sent you a letter by email in early October but have not heard back from you up till today.  This email acts as a kindly reminder.
I would appreciate if you acknowledge your receipt of the October notice by email and advise me of the status of your response. I understand you might need more time to investigate the raised intellectual property issue in the letter.  If you need more time, please let me know.


I look forward to your response.


Best regards,


Cindy


Cindy Chou, Esq.

*(CA No. 275544)*

AT IP Management

Email:  cindychou@atipm.com

Tel:  +1 (832) 538-8868




On Oct 2, 2019, at 9:52 PM, Cindy Chou <cindychou@atipm.com> wrote:


Dear Mr. Gan Caiying (CEO):

I represent Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") regarding intellectual property matters. I would like to discuss with you an intellectual property issue on CH Lighting's LED tube products.

1

Super Lighting has developed a broad patent portfolio and owns more than one hundred U.S. patents and patent applications covering LED tube products. You may find more information about Super Lighting's patent portfolio here: http://jx.super-lamps.com/patent/.

CH Lighting is offering for sale, selling, and delivering LED tube products through various distribution channels directly to companies in the United States. On May 21st 2019, CH Lighting exhibited infringing products and catalogs in the Light Fair International in Philadelphia. We have also reviewed products from your customers' product lines and determined several of these products practice at least Super Lighting's patents, as listed in the table below.

| | Super Lighting's patent | CH Lighting Customers' Products |
|---|---|---|
| 1 | US9,689,536 | |
| 2 | US9,841,174 | |
| 3 | US9,497,821 | |
| 4 | US10,054,271 | |
| 5 | US9,723,662 | |
| 6 | US9,897,265 | |
| 7 | US10,426,003 | |
| 8 | US9,894,732 | |
| 9 | US9,807,826 | |
| 10 | US10,240,725 | TCP |
| 11 | US10,024,503 | 1. L13T8BY5041K |
| 12 | US9,970,602 | |
| 13 | US9,587,817 | USHIO |
| 14 | US9,939,140 | 12.5W LED T8 DW 4000K |
| 15 | US10,208,897 | |
| 16 | US10,323,838 | WESTING HOUSE |
| 17 | US10,295,125 | 14.5T8/48/50 SE/DE |
| 18 | US10,342,078 | KEYSTONE |
| 19 | US 10,352,540 | 1. KT-LED13T5HE-48GC-835-S<br>2. KT-LED7T8-24GC-840-DX2 |
| 20 | US10,190,732 | 3. KT-LED14T8-48G-835-X2 |
| 21 | US9,521,718 | |
| 22 | US20190170305A1 | |
| 23 | US 9,885,449 | |
| 24 | US9,480,109 | |
| 25 | US9,775,215 | |
| 26 | US10,070,498 | |
| 27 | US10,197,225 | |
| 28 | US10,378,700 | |
| 29 | US10,344,921 | |

| 30 | US10,281,092 |
|----|--------------|
| 31 | US10,317,017 |
| 32 | US10,337,676 |
| 33 | US10,288,272 |
| 34 | US10,408,441 |

CH Lighting's LED tube products are covered by at least 34 Super Lighting patents, as listed in the table above. By way of example, I draw your attention to the two attached claim charts of your customer Ushio's product 12.5W LED T8 DW 4000K in view of U.S. Patent No. 10,426,003 and your customer Keystone's product KT-LED14T8-48G-835-X2 in view of U.S. Patent No. 9,894,732. In particular, these charts show how Ushio's product meets each of the elements of claim 1 of the '003 patent and how Keystone's product meets each of the elements of claim 2 of the '732 patent.

I sincerely ask you to consider our reminder and not to sell or offer to sell products that are covered by Super Lighting's patents and to re-design the products. Super Lighting invests heavily in research and development of innovative LED tube lighting solutions and takes its intellectual property rights and the violation thereof very seriously. Accordingly, Super Lighting demands that you cease and desist selling the products identified in the table above, which plainly infringe Super Lighting's patents.

Please confirm by October 30, 2019 that CH Lighting will do so, otherwise we will have no choice but to take further action to resolve this issue.

Regards,

Cindy

Cindy Chou, Esq.

(CA No. 275544)

AT IP Management

Email: cindychou@atipm.com

Tel: +1 (832) 538-8868

<Claim chart US9894732_K.pdf>

<Claim chart US 10426003_U.pdf>

3

# EXHIBIT 3

| | |
|---|---|
| **From:** | Cindy Chou <cindychou@atipm.com> |
| **Sent:** | Sunday, December 22, 2019 8:34 PM |
| **To:** | gcy@chlighting.com; xml@chlighting.com |
| **Cc:** | Henry Hsu; wellsey; simon; SL-General |
| **Subject:** | Re: Intellectual Property Issue on CH Lighting's Products |

Dear Ms. Gan Caiying (CEO),

This correspondence follows up the correspondence I sent you on October 2, 2019, and November 4, 2019, both of which have been completely ignored by CH Lighting.

Based on its refusal to respond to our emails, and CH Lighting's continued sale of infringing products, it is apparent that CH Lighting is set on continuing its intentional and egregious infringement of Super Lighting's patents, including but not limited to the 34 patents set forth in my October 2nd email to you.  Such willful conduct is completely contrary to acceptable business norms and unacceptable to Super Lighting.

Once again, Super Lighting demands that CH Lighting immediately cease all its willful infringement of Super Lighting's patents.  It CH Lighting has not taken this action by January 6, 2020, Super Lighting will be left with no choice but to seek further recourse against CH Lighting.

Cindy


On Nov 4, 2019, at 8:16 PM, Cindy Chou <cindychou@atipm.com> wrote:

Dear Mrs. Gan Caiying(CEO),

I sent you a letter by email in early October but have not heard back from you up till today.  This email acts as a kindly reminder.
I would appreciate if you acknowledge your receipt of the October notice by email and advise me of the status of your response. I understand you might need more time to investigate the raised intellectual property issue in the letter.  If you need more time, please let me know.


I look forward to your response.


Best regards,


Cindy


Cindy Chou, Esq.

1

*(CA No. 275544)*

AT IP Management

Email: cindychou@atipm.com

Tel: +1 (832) 538-8868

On Oct 2, 2019, at 9:52 PM, Cindy Chou <cindychou@atipm.com> wrote:

Dear Mr. Gan Caiying (CEO):

I represent Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") regarding intellectual property matters. I would like to discuss with you an intellectual property issue on CH Lighting's LED tube products.

Super Lighting has developed a broad patent portfolio and owns more than one hundred U.S. patents and patent applications covering LED tube products. You may find more information about Super Lighting's patent portfolio here: http://jx.super-lamps.com/patent/.

CH Lighting is offering for sale, selling, and delivering LED tube products through various distribution channels directly to companies in the United States. On May 21st 2019, CH Lighting exhibited infringing products and catalogs in the Light Fair International in Philadelphia. We have also reviewed products from your customers' product lines and determined several of these products practice at least Super Lighting's patents, as listed in the table below.

|    | Super Lighting's patent | CH Lighting Customers' Products |
|----|------------------------|--------------------------------|
| 1  | US9,689,536            |                                |
| 2  | US9,841,174            | TCP                            |
| 3  | US9,497,821            | 1. L13T8BY5041K                |
| 4  | US10,054,271           | USHIO                          |
| 5  | US9,723,662            | 12.5W LED T8 DW 4000K          |
| 6  | US9,897,265            |                                |
| 7  | US10,426,003           | WESTING HOUSE                  |
| 8  | US9,894,732            | 14.5T8/48/50 SE/DE             |
| 9  | US9,807,826            | KEYSTONE                       |
| 10 | US10,240,725           | 1. KT-LED13T5HE-48GC-835-S     |
| 11 | US10,024,503           | 2. KT-LED7T8-24GC-840-DX2      |
| 12 | US9,970,602            | 3. KT-LED14T8-48G-835-X2       |
| 13 | US9,587,817            |                                |

2

| 14 | US9,939,140 | |
|----|-------------|---|
| 15 | US10,208,897 | |
| 16 | US10,323,838 | |
| 17 | US10,295,125 | |
| 18 | US10,342,078 | |
| 19 | US 10,352,540 | |
| 20 | US10,190,732 | |
| 21 | US9,521,718 | |
| 22 | US20190170305A1 | |
| 23 | US 9,885,449 | |
| 24 | US9,480,109 | |
| 25 | US9,775,215 | |
| 26 | US10,070,498 | |
| 27 | US10,197,225 | |
| 28 | US10,378,700 | |
| 29 | US10,344,921 | |
| 30 | US10,281,092 | |
| 31 | US10,317,017 | |
| 32 | US10,337,676 | |
| 33 | US10,288,272 | |
| 34 | US10,408,441 | |

CH Lighting's LED tube products are covered by at least 34 Super Lighting patents, as listed in the table above. By way of example, I draw your attention to the two attached claim charts of your customer Ushio's product 12.5W LED T8 DW 4000K in view of U.S. Patent No. 10,426,003 and your customer Keystone's product KT-LED14T8-48G-835-X2 in view of U.S. Patent No. 9,894,732.  In particular, these charts show how Ushio's product meets each of the elements of claim 1 of the '003 patent and how Keystone's product meets each of the elements of claim 2 of the '732 patent.

I sincerely ask you to consider our reminder and not to sell or offer to sell products that are covered by Super Lighting's patents and to re-design the products.  Super Lighting invests heavily in research and development of innovative LED tube lighting solutions and takes its intellectual property rights and the violation thereof very seriously. Accordingly, Super Lighting demands that you cease and desist selling the products identified in the table above, which plainly infringe Super Lighting's patents.

Please confirm by October 30, 2019 that CH Lighting will do so, otherwise we will have no choice but to take further action to resolve this issue.


Regards,

3

Cindy


Cindy Chou, Esq.

(*CA No. 275544*)

AT IP Management

Email: cindychou@atipm.com

Tel:  +1 (832) 538-8868

<Claim chart US9894732_K.pdf>

<Claim chart US 10426003_U.pdf>

# EXHIBIT 4

**By Pass   T8 Sign light
CH1180AX Series**

**T8 Series**
Linear LED Tube



## Product Description

The CH1180AX T8 LED tube lamp provides exceptional LED lighting with reduced energy and maintenance costs. This CH1180AX does not require a ballast to work with and offers a built-in universal line voltage driver.

## Features

* By Pass Ballasts: AC 120~277V,50/60HZ
* UL&CUL Classified
* ETL sanitation certificate(equal to NSF certificate for food equipment)
* Field angle-360°light emitting area
* The cap can rotate 90°, making it easier to use





### Product Specification

| Item No. | Power (W) | Lumen (lm) | CCT (K) | CRI | Lifetime (hrs) | Socket | Dimension | Field Angle(°) |
|----------|-----------|------------|---------|-----|----------------|--------|-----------|----------------|
| CH1180AX | 21 | 2500 | 4000-6500 | 83 | 50000 | R17D | 4FT | 360 |
| CH1180AX | 25 | 3125 | 4000-6500 | 83 | 50000 | R17D | 5FT | 360 |
| CH1180AX | 32 | 3750 | 4000-6500 | 83 | 50000 | R17D | 6FT | 360 |
| CH1180AX | 42 | 5000 | 4000-6500 | 83 | 50000 | R17D | 8FT | 360 |

V190101



# Dual Mode Tubes
# NEW CH1157S Series

**T8 Series**
Linear LED Tube

## Product Description

The CH1157S smart T8 LED tubes can work on both ballast compatible and by pass applications at the same time. In ballast compatible model it can work with most instant start ballasts; while in by pass model, it works direclty with the line voltage 120V-277V.  One lamp with two functions,  you don't need to have inventory for two lamps, which will decrease your inventory cost much.

## Features

* Both ballast compatible model and bypass model. two functions in one lamp
* Ballast compatible for most  instant start ballasts
* UL&CUL Listed/Classified
* DLC4.3, 5 years warranty
* ETL sanitation certificate(equal to NSF certificate for food equipment)
* Beam angle-180°light emitting area
* No-Flicker as a choice



   

## Product Specification

| Item No. | By pass Power (W) | Compatible Lamp Power(W) | Lumen (lm) | CCT (K) | CRI | Lifetime (hrs) | Socket | Dimension | Field Angle(°) | Operation Mode |
|---|---|---|---|---|---|---|---|---|---|---|
| CH1157S | 10 | 9 | 1350-1420 | 3000-5000 | 83 | 50000 | G13 | 2FT | 320 | Compatible & By pass |
| CH1157S | 12 | 11 | 1600-1650 | 3000-5000 | 83 | 50000 | G13 | 3FT | 320 | Compatible & By pass |
| CH1157S | 12.5 | 11 | 1650-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 | Compatible & By pass |
| CH1157S | 13 | 12 | 1800-1900 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 | Compatible & By pass |

V190101


晨辉·光宝 CH LIGHTING

# By Pass Single & Double-input
# NEW CH1152S Series

**T8 Series**
Linear LED Tube

## Product Description

The CH1152S T8 LED tube lamp provides exceptional LED lighting with reduced energy and maintenance costs. This CH1152S does not require a ballast to work with and offers a built-in universal line voltage driver.

## Features

* By Pass Ballasts: AC 120~277V,50/60HZ
* UL&CUL Classified, DLC 4.3, 5 years Warranty
* Misuse-protected function, if forgot to bypass the ballast the lamp won't work, no risk on fire cap melted
* ETL sanitation certificate (equal to NSF certificate for food equipment)
* Can work in both single end and double end, shunted and non-shunted socket



   

| Product Specification | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Power (W) | Lumen (lm) | CCT (K) | CRI | Lifetime (hrs) | Socket | Dimension | Field Angle(°) |
| CH1152S | 7 | 900-1000 | 3000-5000 | 83 | 50000 | G13 | 2FT | 320 |
| CH1152S | 9 | 1125-1250 | 3000-5000 | 83 | 50000 | G13 | 2FT | 320 |
| CH1152S | 12 | 1450-1550 | 3000-5000 | 83 | 50000 | G13 | 3FT | 320 |
| CH1152S | 9.2 | 1600-1650 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 9.8 | 1650-1750 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 10.5 | 1600-1700 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 11.5 | 1650-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 12.5 | 1650-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 13.5 | 1800-2000 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 14.5 | 1700-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 15 | 1700-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 15 | 2000-2200 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 16.5 | 2200-2400 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 17 | 2000-2200 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 18 | 2000-2200 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 18.5 | 2400-2600 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152S | 22 | 2400-2600 | 3000-5000 | 83 | 50000 | G13 | 5FT | 320 |

V190215


晨辉·光宝
CH LIGHTING

# By Pass Single & Double-input New CH1152AS Series

## T8 Series
### Linear LED Tube

## Product Description

The CH1152AS T8 LED tube lamp provides exceptional LED lighting with reduced energy and maintenance costs. This CH1152AS does not require a ballast to work with and offers a built-in universal line voltage driver.

## Features

* By Pass Ballasts: AC 120~277V,50/60HZ
* UL&CUL Classified
* ETL sanitation certificate(equal to NSF certificate for food equipment)
* DLC 4.3, 5 years Warranty
* Beam angle-180° light emitting area
• Low optical flicker less than 2%,UL Vmark certificate



    

## Product Specification

| Item No. | Power (W) | Lumen (lm) | CCT (K) | CRI | Lifetime (hrs) | Socket | Dimension | Field Angle(°) |
|---|---|---|---|---|---|---|---|---|
| CH1152AS | 7 | 900-10000 | 3000-5000 | 83 | 50000 | G13 | 2FT | 320 |
| CH1152AS | 12 | 1450-1550 | 3000-5000 | 83 | 50000 | G13 | 3FT | 320 |
| CH1152AS | 9.8 | 1600-1700 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152AS | 11.5 | 1650-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152AS | 14.5 | 1700-1800 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |
| CH1152AS | 18.5 | 2400-2600 | 3000-5000 | 83 | 50000 | G13 | 4FT | 320 |

V190101


晨辉·光宝 CH LIGHTING

# EXHIBIT E

# Fabian VanCott

**Scott M. Lilja**
**Nicole M. Deforge**
Direct Dial: 801.323.2266
slilja@fabianvancott.com
ndeforge@fabianvancott.com

March 18, 2021

<u>**VIA EMAIL**</u>

Matthew C. Bernstein
Evan S. Day
Miguel J. Bombach
Ruchika Verma
MBernstein@perkinscoie.com
EDay@perkinscoie.com
MBombach@perkin.scoie.com
RVerma@perkinscoie.com
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Skyler M. Howton
SHowton@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 259-4951
Facsimile: (214) 965-7752

Re: Objection to Subpoenas Served on ESL Vision LLC

All,

We represent ESL Vision LLC ("ESL") in regard to the subpoenas Jiaxing Super Lighting Electric Appliance Co. ("Jiaxing") served on ESL on March 4, 2021 in connection with the case of *Jiaxing Super Lighting Electric Appliance Co. et al v. CH Lighting Technology Co. Ltd et al*, Case No. 6:20-cv-00018-ADA now pending in the United States

ATTORNEYS AT LAW

215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: 801.531.8900   Fax: 801.596.2814
www.fabianvancott.com

District Court for the Western District of Texas. Please allow this letter to serve as an objection to the subpoenas.

After review of the subpoenas and the First Amended Complaint, we object that these subpoenas seek trade secrets and other confidential research, development, or commercial information. The 30(b)(6) topics included with the deposition subpoena, as well as the list of requested documents for production, are both overly broad and would require disclosure of virtually all information, documents, and things possessed by ESL regarding its LED Tube Lamp business. Moreover, neither subpoena is limited by time, location, or manner. Both subpoenas would require ESL to expend tens of thousands of dollars in document production, deposition preparation, document searches, document review, and attorney fees.

We might expect to see discovery requests of this scope for named parties to a case, but even then, the requests are so broad that a party would likely find many of these topics and document requests objectionable and unduly burdensome. However, ESL is not a party to this case and is not once mentioned in the First Amended Complaint as having any part in the alleged patent infringement scheme at issue. In light of the Amended Complaint, the information sought from ESL Vision does not appear to be of any relevance to this case. The burden, expense, and required exposure of ESL's confidential information and trade secrets to industry competitors is disproportionate to the relevance of any of the information or documents Jiaxing seeks.

If you would like to discuss this matter to discuss whether there is any way to resolve some of the above issues, please contact me at your convenience.

Finally, please let us know if you intend to enforce the subpoena for testimony prior to resolving the issues raised as to the document subpoena as a motion to quash may be required.

Very truly tours,

*Scott M. Lilja*

Scott M. Lilja